# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION


KELLY PERRY                                                    PLAINTIFF


VS.                          CASE NO. 3:18CV00017 PSH


NANCY A. BERRYHILL, Acting Commissioner,
    Social Security Administration                            DEFENDANT

## ORDER

Plaintiff Kelly Perry ("Perry"), in her appeal of the final decision of the Commissioner of the

Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance

benefits (DIB), contends the Administrative Law Judge ("ALJ") erred: (1) in determining her

credibility; (2) by drawing his own conclusory inferences from the medical records; (3) by failing

to include Perry's deficiencies in concentration, persistence, and pace in hypothetical questions

posed to the vocational expert; and (4) by failing to account for her mental limitations in determining

her residual functional capacity ("RFC"). The parties have ably summarized the medical records

and the testimony given at the administrative hearings conducted on July 24, 2014, and on March

22, 2017. (Tr. 25-59, 392-424). The Court has carefully reviewed the record to determine whether

there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C.

§ 405(g). The relevant period under consideration is from May 31, 2013, Perry's alleged onset date,

through April 3, 2017, when the ALJ ruled against Perry.

*The Administrative Hearings:*

Perry, who was 44 years old at the time of the first administrative hearing, has a high school education, and lived with her husband, ten year old daughter, and twenty three year old son. Since the second administrative hearing is more relevant, only a brief review of the first hearing is necessary. Perry testified to suffering a stroke in 2005, returning to work despite problems, and ceasing work as a laundry clerk in 2013. Perry described dealing with physical problems such as carpal tunnel syndrome in her right hand, numbness in her buttocks and privates, instability and weakness in her legs, a bulging disc in her neck, scoliosis, and muscle spasms. Mentally, Perry stated she had attention and concentration issues, anxiety attacks, did not get along with people, and was easily upset. (Tr. 32-51).

The second administrative hearing occurred after Perry requested a remand of the case for further proceedings. This request was not opposed by Berryhill, and at the outset of the second hearing the ALJ specified that the remand was for the purpose of a more thorough consideration of Perry's mental impairments. (Tr. 452, 395). Perry was 47 when the second hearing was conducted, and was living with her husband, twelve year old daughter, and twenty six year old son. She stated she was 5'6" and weighed 215 pounds. Perry confirmed she last worked as a laundry clerk in 2013, resigning after her health deteriorated since the 2005 stroke, including leg spasms and instability. She indicated she was prescribed a high dosage of Coumadin, and this prevented her from surgeries, including carpal tunnel syndrome surgery, and from taking injections. She described using a prescribed cane on occasion, using a TENS unit on her back, and utilizing a handicapped sticker on her vehicle. According to Perry, her general practice physician was treating her for depression and suggested a referral to a mental health expert. Perry declined this option, explaining that she had

a bad experience with mental health care years before.[1]  Perry detailed numerous limitations and impairments: her depression left her nervous and fidgety and no longer a "people person"; headaches, including severe headaches once a month which required a day and a half for recovery; inability to clean floors and toilets; limits on fine motor skills, resulting in an inability to cut up food; inability to keep her head straight or tilt her head upwards; inability to shower without help; inability to lean and pick up items; leg spasms; leg instability; sleeplessness and weight gain as side effects to medications; and inability to stand or sit for long periods.  (Tr. 415).  Perry indicated she drives "very little," can reach in front of her, and can lift a gallon of milk.  (Tr. 398, 397-416).

Diane Smith ("Smith"), a vocational expert, stated Perry's past work as a laundry clerk was semi-skilled work performed at the light exertional level.  The ALJ posed a hypothetical question to Smith, asking her to assume a worker of Perry's age, education, and experience, who could perform light work where the worker was allowed to use a cane to come and go from the work station on level ground, and allowed to sit or stand while working.  Additionally, the job would not require more than frequent reaching and handling duties, would involve simple, routine, repetitive tasks with simple, direct, and concrete supervision, would be a SVP (specific vocational preparation) level 1 or 2 job which could be learned in no longer than thirty days, and would not require more than occasional changes to the workplace setting.   Smith responded that such a worker could not perform Perry's past relevant job but could perform other jobs, such as marking clerk or assembler.  A second hypothetical question was posed, assuming the same parameters as in the first hypothetical but adding the restrictions that the worker would be off task 25% of the work day due to physical and mental impairments.  Smith identified no jobs for the worker described in the ALJ's second

---

[1]

At the first hearing Perry stated she received mental health treatment in the 1980's.  (Tr. 43).

hypothetical question. A third hypothetical question was posed, assuming the same parameters as in the first hypothetical but adding a requirement that the worker be in a recliner during portions of their production work time. Smith identified no jobs for the worker described in the ALJ's third hypothetical question. (Tr. 417-420).

*ALJ's Decision:*

In his April 3, 2017, decision, the ALJ determined Perry had the following severe impairments: peripheral neuropathy, late effects of cerebrovascular accident, mild cervical spine degenerative disc disease, spinal cord lesion, cubital tunnel syndrome, obesity, mild carpal tunnel syndrome, anxiety disorder, and depression. The ALJ further determined Perry had the RFC to perform light work with the restrictions which mirrored those posed to Smith in the ALJ's first hypothetical question. The ALJ, citing the appropriate factors,[2] assessed Perry's subjective allegations, finding her statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 374). The ALJ thoroughly discussed the medical evidence, with particular emphasis on the findings of treating physicians Dr. Lance E. Tuetken ("Tuetken") and Dr. Demetrius S. Spanos ("Spanos"). The ALJ also addressed the 2013 consultative mental evaluation of Dr. Samuel B. Hester ("Hester"), and found the medical evidence did not support the opinions of the state agency physicians who opined Perry could perform semi-skilled light work. Specifically, the ALJ determined Perry has both physical and mental limitations, but further found those limitations were not disabling. Relying upon Smith's testimony that Perry could perform the jobs of marking clerk and assembler, the ALJ concluded Perry was not disabled. (Tr. 366-382).

---

[2]
Perry is correct that the ALJ did not cite *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). However, the ALJ did cite the relevant regulations which embody the *Polaski* factors, as well as citing the relevant factors at length. (Tr. 373).

*Medical Evidence During the Relevant Period:*

Perry was seen often during the relevant period. Treating physician Tuetken saw her roughly eleven times between June 2013 and February 2017. A review of these records shows Perry was consistently treated with anticoagulants[3] and diagnosed with a variety of other impairments. Tuetken's records document Perry's weight gain during the relevant period, moving from 152 pounds in 2013 to 204 pounds in 2017. (Tr. 249, 782). Tuetken's notes also show occasional diagnoses of anxiety and depression, for which Tuetken prescribed various medications. (Tr. 324, 654-657, 649-561, 704-708, 761-764, 780-783). At the outset of the relevant period, on June 4, 2013, Tuetken limited Perry to "no work until Monday." (Tr. 250). Six days later, Tuetken instructed Perry that she could return to work with no lifting greater than 20 pounds and no repetitive deep bending of the back. (Tr. 253). Tuetken did not impose additional restrictions on Perry.

The record shows Perry was seen by neurologist Spanos in 2013, then four additional times beginning in 2016. Spanos initially diagnosed sciatic nerve lesion, idiopathic peripheral neuropathy, lumbar radiculopathy, and limb pain. (Tr. 280). He later referred Perry for a nerve conduction study, which found moderately severe entrapment of the left and right ulnar nerves, and mild left and right carpal tunnel syndrome. (Tr. 726-728). Spanos prescribed Nortriptyline and found it effective with Perry's pain, and suggested elbow pads for assistance. (Tr. 717-720).

Other notable medical entries include the 2013 consultative mental evaluation of Hester, who diagnosed pain disorder and anxiety disorder. Hester concluded Perry could perform most daily

---

[3]

Perry cites the numerous PT and INR readings obtained by Tuetken. These readings, which stand for prothrombin time and international normalized ratio, confirm that Perry had consistently high levels, indicating her blood did not clot within normal ranges. See www.clotcare.com/ptinr.aspx.

activities, though slowly, could communicate and interact in a socially adequate manner, could communicate in an intelligible and effective manner, could cope with the mental demands of basic work tasks, could attend and sustain concentration on basic tasks, could sustain persistence in completing tasks, and could complete work tasks within an acceptable timeframe unless the tasks exacerbate her pain issues. (Tr. 312). Further, in October 2015, it was recommended that Perry attend six physical therapy sessions for her neck pain. She attended the first session, cancelled the second session, and did not appear for the final four appointments. She was discharged for noncompliance. (Tr. 736-751).

**Error in determining Perry's credibility:**

Perry faults the ALJ's credibility analysis, alleging it failed to comply with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). As asserted in Perry's brief, *Polaski* requires the ALJ to consider such matters as: her daily activities; the duration, frequency, and intensity of her pain; the dosage, effectiveness, and side effects of her medications; precipitating and aggravating factors; and functional restrictions. Docket entry no. 12, pages 23-24. In his opinion, the ALJ listed the above factors and indicated he had "given full consideration" to them. (Tr. 373). In addition to this blanket statement, the ALJ cited the inconsistency between Perry's subjective statements and the objective medical evidence, noted Perry's non-compliance with prescribed treatment, her decision to reject Tuetken's suggestion for mental health treatment, reviewed her daily activities, and reviewed her medications, including instances where Perry responded favorably to medication. The credibility assessment of the ALJ is supported by substantial evidence. An ALJ is not required to mechanically address each *Polaski* factor. *See, e.g., Strongson v. Barnhart*, 361 F.2d 1066 (8th Cir. 2004). In this instance, Perry urges that the credibility analysis would have been better had the ALJ

mentioned Perry's work record, which was excellent. While this may be the case, it is not appropriate for this Court to perform a *de novo* review of the factors. Rather, our inquiry is whether substantial evidence supports the ALJ's findings. We find that it does. There is no merit to the first claim raised by Perry.

**ALJ erred by drawing his own conclusory inferences from the medical records:**

Perry contends the ALJ's "entire RFC assessment is conclusory" and is essentially guesswork in the absence of opinions from treating or examining doctors. This, according to Perry, left the ALJ to insert his opinions into the formulation of her RFC. This argument is without merit.

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). It is true that there is no opinion addressing Perry's ability to physically[4] perform work-related activities, and while such an opinion or opinions would have been helpful, one was not required. *See Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016) (no requirement that an RFC finding be supported by a specific medical opinion). Medical records from treating physicians can provide affirmative medical evidence supporting an RFC determination. *Johnson v. Astrue*, 628 F.3d 991 (8th Cir. 2011). Here, the records of Tuetken and Spanos, the treating physicians, were ample and provided a sound basis for the the ALJ to determine her RFC. The ALJ could and did rely, in large part, upon the records of Tuetken and Spanos. The ALJ did not rely upon the opinions offered by the state agency medical professionals, who opined Perry could perform a range of semi-skilled light work. The ALJ could

---

[4]

Hester, the consultative examiner, opined that Perry was mentally capable of performing work activities.

make the assessment that he did, and substantial evidence supports his findings.

**ALJ error in failing to include Perry's deficiencies in concentration, persistence, and pace in hypothetical questions posed to the vocational expert:**

Perry is correct that the ALJ did not include a limitation for concentration, persistence, or pace in the hypothetical question posed to Smith. Ultimately, the ALJ relied upon Smith's response to the hypothetical in finding Perry was not disabled.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *See Taylor v. Chater*, 188 F.3d 1274, 1278 (8th Cir. 1997). The question must include all of the claimant's impairments that are substantially supported by the record as a whole. *See Id.* If the ALJ finds the claimant has a limitation in concentration, persistence, or pace, the ALJ must include the limitation in the question. *See Newton v. Chater*, 92 F.2d 688 (8th Cir. 1996). The manner in which the ALJ accounts for the limitation and incorporates it into the question, though, can be a bit involved.

For instance, in *Newton v Chater*, there was "no dispute in the medical evidence" that Newton suffered from deficiencies of concentration, persistence, or pace, and the ALJ even stated on a Psychiatric Review Technique Form that Newton "often" had deficiencies of concentration, persistence, or pace. *See Newton v. Chater*, 92 F.3d at 695. In a hypothetical question to a vocational expert, the ALJ did not include a limitation for concentration, persistence, or pace but instead simply limited the hypothetical individual to "simple jobs." *See Id.* The Court of Appeals reversed and remanded, finding that the reference to "simple jobs" was not enough to account for the individual's limitation in concentration, persistence, or pace.

In *Brachtel v. Apfel*, 132 F.3d 417 (8th Cir. 1997), the ALJ found that Brachtel would often manifest deficiencies in concentration, persistence, or pace. In a hypothetical question to a vocational expert, the ALJ identified an individual who had the ability to do "only simple routine repetitive work, which does not require close attention to detail," and who should not work "at more than a regular pace." *See Id.* at 421. The Court affirmed, finding the following:

> ... While this is scantly more than what was included in the *Newton* hypothetical, it is enough. In addition to the ability to do simple work, the ALJ's hypothetical specifically limited concentration (work "which does not require close attention to detail") and pace ("should not work at more than a regular pace"). These specific limitations are supported by the record, and their inclusion in the hypothetical is enough to distinguish this case from Newton.

*See Id.*

At step three, the ALJ found that Perry's impairments did not meet or equal a listed impairment. As a part of finding that Perry's mental impairment did not meet or equal a listed impairment, the ALJ found she had moderate limitations in her ability to concentrate, persist, or maintain pace. (Tr. 371). The ALJ noted that the foregoing finding was *not* a part of the assessment of Perry's RFC but was being used to rate the severity of her mental impairment at steps two and three. (Tr. 372).

When Smith testified during the administrative hearing, the ALJ's hypothetical question included a limitation, among other things, to simple, routine, repetitive task jobs where supervision would be simple, direct, and concrete. (Tr. 418). Smith testified that there is work for an individual with such limitations. The ALJ relied upon Smith's testimony.

Perry challenges the hypothetical question because it did not include an adequate limitation for concentration, persistence, or pace as required by *Newton v. Chater*. There is no merit to her

assertion for at least two reasons.[5]

First, *Newton v. Chater* is distinguishable from the case at bar. In that case, there was no dispute in the medical evidence about whether the claimant suffered from deficiencies of concentration, persistence, or pace. Here, the extent to which Perry suffers from such deficiencies is open to question. The only evidence supporting Perry's deficiencies of concentration, persistence, or pace is Perry's self-reports. (E.g., her testimony from the first administrative hearing, at page 42). However, Perry's self-reports are inconsistent because there is evidence she is capable of sustaining some measure of concentration, persistence, or pace. For instance, Perry can drive, and she is involved in the care of her twelve year old daughter, activities that require some ability to concentrate and persist. *See Phelps v. Colvin*, 2015 WL 5316875 (E.D. Ark. 2015) (Deere, M.J.), report and recommendation adopted, 2015 WL 5050547 (E.D. Ark. 2015) (Wright J.) (watching television and playing video games until bedtime suggest ability to sustain concentration and persistence).

Moreover, in *Newton v. Chater*, the ALJ found that Newton "often" had deficiencies of concentration, persistence, or pace. Here, the ALJ made no such finding nor any similar finding. To the contrary, the medical evidence of record on this issue starkly contrasts with *Newton v.*

---

[5]

The Commissioner maintains that the ALJ's findings at steps two and three are not an assessment of Perry's residual functional capacity. The Court agrees. Each step of the sequential evaluation process serves a distinct purpose, "the degrees of precision required at each step differ," and the deferential standard of review precludes the Court from labeling findings as inconsistent if they can be harmonized. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) [citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard."). Different legal standards and analyses are involved in making findings at steps three and five, the steps at issue here. *See Cheeter v. Colvin*, 2015 WL 5853168 (E.D.Ark. 2015) (Kearney, M.J.), report and recommendation adopted, 2015 WL 5838476 (E.D.Ark. 2015) (Wright, J.).

*Chater.* Hester's mental evaluation specifically found Perry to have "the ability to attend and sustain concentration on basic tasks" and to have "the ability to sustain persistence in completing tasks." (Tr. 312).

Second, to the extent *Newton v. Chater* is not distinguishable from the case at bar, the Court is persuaded that the ALJ's hypothetical question was adequate. The question identified an individual who was limited to, *inter alia*, simple, routine, repetitive tasks, and substantial evidence on the record as a whole supports this formulation by the ALJ. The ALJ's question in this instance captured the concrete consequences of Perry's deficiencies of concentration, persistence, or pace. There is no merit in the third claim of Perry.

**The ALJ erred by failing to account for Perry's mental limitations in determining her RFC:**

Perry faults the ALJ for relying too heavily on Hester's findings in formulating her mental RFC. She contends the mental limitations would have been different had the ALJ taken into account her mental deterioration after Hester's 2013 report. Perry testified that Tuetken, on more than one occasion, attempted to refer Perry to a mental health expert, which she declined. (Tr. 412). This refusal, along with other evidence of record, does not support her claim of significant deterioration after Hester's 2013 report. A review of her mental health complaints show a spike in those issues in January 2015. The anxiety appeared to be situational, with the medical notes listing stressors as her brother being diagnosed with cancer, her son moving away, and dental work. (Tr. 629, 780). During the remainder of the relevant period Perry took Xanax at the same dosage as prescribed in 2013, and added Zoloft with favorable results. Tuetken and Spanos typically noted Perry to have a normal mood and affect, and normal concentration and attention. The record does not portray a

steady mental deterioration during the relevant period, and the ALJ did not err in formulating Perry's mental RFC. Indeed, he credited her somewhat in limiting the type of work which she might perform. Substantial evidence supports the ALJ's rulings in this regard.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Perry's complaint is dismissed with prejudice.

IT IS SO ORDERED this 10th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE